## HANSEN v. OHMAN et al.

(Circuit Court of Appeals, Ninth Circuit. February 14, 1927.)

No. 4705.

Trusts ☞99—Plaintiff held entitled to recover for house and household effects appropriated by defendants, but not to have trust declared as to land.

Where plaintiff owner of house on land not yet subdivided into lots left it and her household furniture in possession of one authorized, to use it, and instructed him to buy for her lot on which house stood when land was subdivided, and where such person and another purchased lot in their joint names, wore out and destroyed plaintiff's furniture and on her return ejected her from the house, *held* plaintiff was entitled to judgment for value of house and for loss of household effects, but was not entitled to have trust in lot declared in her favor.

Appeal from the District Court of the United States for the Third Division of the Territory of Alaska; E. E. Ritchie, Judge.

Suit by Caroline Hansen against Albert Ohman and another. Decree for defendants, and plaintiff appeals. Reversed and remanded, with instructions.

Donohoe & Dimond, of Cordova, Alaska, for appellant.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

GILBERT, Circuit Judge. The appellant, in her complaint against the appellees, alleged that in 1914 she was the owner of a house in Cordova, which stood upon land not yet subdivided into lots; that about October, 1914, the appellee, Albert Ohman, the nephew of Oscar Ohman, made his home with her; that in October, 1915, when the appellant was about to depart for an extended visit to Minnesota, she entered into an agreement with Albert, in which he promised to occupy said house during her absence and use the household furniture therein and take care of the same, and that upon the subdivision of said land he would purchase for her the lot on which the house stood; that in 1917 the land was subdivided and the land occupied by her house became lot 4 in block 2, Railway addition; that in January, 1919, said lot was purchased by the appellees in their joint names for the consideration of $100, of which fact she was uninformed un-

til after her return to Cordova in December, 1922; that in July, 1923, the appellees forcibly ejected her from the house; that the household furniture therein, which they had used and occupied, was worn out, destroyed, or carried away, to her damage in the sum of $500. She prayed that the appellees be adjudged to hold the title to said lot in trust for her, that they be required to deed the same to her, that the amount they paid therefor be deducted from the damages which she sustained, and, in case the court found it inequitable to decree said lot to her, that she have judgment against the appellees for $1,000, the value of her house so appropriated, and for such other relief as might pertain to equity. Upon the testimony judgment was entered against the appellant and for the appellees for their costs and disbursements.

Upon the testimony, which we have carefully considered, we find no error, in that the judgment failed to award the equitable relief sought by the appellant as to the house and lot. But we think it clear that the appellant was entitled to a judgment for the value of her house taken and appropriated by the appellees and for the loss and destruction of her household effects. In the year 1914 the appellant, a woman of advanced age, took into her house and nursed and cared for Albert Ohman, who was sick. He resided with her until she left Alaska in October, 1915. It is undisputed that he then agreed to live in the house until her return and take care of the house and of her household furniture and clothing which she left. She remained in the East much longer than was expected. In the meantime, from November 14, 1915, to August 29, 1922, a series of letters was written by Albert to the appellant. They are addressed to her as "Dear Mother," and they exhibit a friendly, and even affectionate, regard for her. Albert wrote of the improvements he was making on the place, "hoping to have the place in first class shape when you come back." On April 23, 1917, he wrote: "Uncle is staying in the cabin with me." In December, 1916, he wrote, referring to the subdivision of the land: "If you should consider coming, the spring would be the best time, and also I would be able probable to buy the lot or

make some agreement with the Co. Then I could fix the house up, making it comfortable for you." In August, 1917, he wrote: "Uncle bought the lots. * * * So I have to move the house around. They gave us 30 days to do it in. * * * I will try to fix the house as comfortable as possible for you when you come." On October 4, 1917, he wrote of his efforts to make money to pay for the lot on which the house stood and for two adjoining lots. The appellant returned to Cordova on December 22, 1922, and resumed her residence in the house, where she, together with the appellees, lived for six months. At some time during that period Oscar inquired of her if she would sell the house. In July she went away to attend a neighbor who was sick, and in her absence Oscar moved all her furniture from the house. This was done evidently without Albert's consent. Albert does not deny that he told the appellant that his uncle was crazy and had threatened to throw everything she had out in the street; nor does he deny that when she asked him where her clothes were, he said he had given some of them away. "I asked him where my sweaters were. He said his uncle used to wear them. I asked him where my raincoat was, and he said he had taken it up to his cabin and had burned it up. I asked him where my rubber boots and hiking boots were, and he said he took them up to his camp, and there wasn't a thing left."

There can be no question but that in justice and equity the appellant is entitled to a judgment against the appellees for the value of her house which they moved upon the lots which they purchased, and for their use and appropriation of her personal property and the loss and destruction of a portion thereof. The evidence is conflicting as to the value of the house. It seems clear that the appellant overestimates it and that the appellees underestimate it. As to the value of the personal property, no estimate is made by any witness. Our conclusion is that the appellant is entitled to a judgment for the sum of $200 and her costs and disbursements.

The judgment is reversed, and the cause remanded, with instruction to enter a judgment as hereinabove indicated.